Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 257 | DATE | June 16, 2004 |
| CASE TITLE | Angelita Greviskes  v  Universities Research Association etc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum Opinion and order entered. Accordingly, this action is dismissed with prejudice. Plaintiff is ordered to pay defendant's reasonable attorney's fees incurred in connection with the motion to dismiss.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | Document Number |
| X | Notices mailed by judge's staff. | | JUN 18 2004 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | docketing deputy initials | 73 |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | | |
| | courtroom GS deputy's initials | | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANGELITA GREVISKES, )
)
Plaintiff, )
) No. 03 C 0257
v. )
) Judge Robert W. Gettleman
UNIVERSITIES RESEARCH ASSOCIATION, )
INC., d/b/a Fermilab, and FERMILAB, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

This case demonstrates how an unscrupulous plaintiff can destroy what might otherwise have been a meritorious claim. We will never know how meritorious that claim might have been, because the court has concluded that plaintiff Angelita Greviskes's indefensible and unlawful conduct requires dismissal of this case and the imposition of sanctions, without reaching the merits.

### FACTS[1]

Plaintiff filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. against her former employer, Universities Research Associates, Inc. d/b/a Fermilab,[2] claiming employment discrimination based upon her national origin. During

---

[1] The facts and findings recited herein constitute findings of fact consistent with Fed. R. Civ. P. 52. This order contains both findings of fact ("Findings") and conclusions of law ("Conclusions"). To the extent that any Findings may be deemed conclusions of law, they shall also be considered Conclusions. To the extent that any Conclusions may be deemed findings of fact, they shall also be considered Findings. See Miller v. Fenton, 474 U.S. 104, 113-14 (1985).

[2] At the hearing held on May 26, 2004, the court was informed by defendant that its correct name is Universities Research Association, Inc., and the court hereby orders the caption be amended accordingly.

discovery, plaintiff sought the personnel records of a co-employee, Terry Erickson, to attempt to demonstrate that plaintiff was treated more harshly than Ms. Erickson for alleged similar attendance infractions. An agreed protective order was entered that specifically covered personnel records, although defendant neglected to mark Ms. Erickson's records "Confidential" when it produced them to plaintiff's counsel, John Dore.

Apparently, plaintiff was unsatisfied with the records produced, and decided that she wanted Ms. Erickson's time sheets that she believed she needed to respond to defendant's motion for summary judgment.[3] According to defendant, plaintiff sent or caused to be sent two fax communications to defendant's payroll department on November 24 and 25, 2003, (copies of which are attached to this opinion as Appendices 1 and 2). These faxes are on defendant's letterhead and purport to be from Ms. Erickson and bear a signature purporting to be Ms. Erickson's. They each request defendant's payroll record department to send copies of "my" monthly time sheets from January 2001 through December 2002 to "Rothchild and Dore, c/o P.O. Box 393, Batavia, IL 60510" by November 30, 2003. The faxes also contain Ms. Erickson's employee identification and Social Security numbers. The November 24 fax also states that the information may be faxed to telephone number 630-879-8390.

Plaintiff's ruse began to unravel when Bonnie Consolvo, an employee in defendant's payroll department who had been given the two faxes, called Ms. Erickson to explain that she could not comply with Ms. Erickson's request by November 30. When Ms. Erickson replied that she had made no such request, the matter was brought to the attention of defendant's in-house

---

[3]Defendant's motion for summary judgment was filed on October 27, 2003, and presented October 29. Plaintiff's response was originally due November 29, but the time was extended at plaintiff's request to December 29, 2003.

2

counsel, David Gassman. Mr. Gassman recognized the name "Dore" as the attorney representing plaintiff in this action.

The following facts quickly became apparent to defendant and have been established by the evidence subsequently presented to the court.

1. The post office box address in Batavia does not belong to Mr. Dore; it does belong to the law firm of plaintiff's husband, Paul Greviskes (who represents plaintiff in a pending state court action filed by plaintiff against defendant.)

2. The telephone number 630-879-8390 (from the November 24 fax) is the fax number of Paul Greviskes's law firm.

3. The fax number at the top of the page, which is imprinted by the sending fax machine, is that of Greviskes Builders, a defunct company that had been owned by Paul Greviskes's deceased brother Donald Greviskes. Paul is the administrator of Donald's estate.

4. Both faxes were transmitted from the second telephone line belonging to the Aurora, Illinois home of plaintiff and Paul Greviskes, 630-896-6856.

5. The employee identification and Social Security numbers set forth in the faxes are those of Terry Erickson, although her signature is a forgery and she never sent or authorized the faxes.

It gets worse. In response to defendant's counsel's December 1, 2003, written request to Mr. Dore and Paul Greviskes to explain the apparent forgeries, defense counsel received only an angry telephone message from Mr. Dore denying that he had anything to do with the allegations and demanding a written apology. Defendant then filed the instant motion to dismiss on December 12, 2003, based on, (a) Fed. R. Civ. P. 37(b)(2)(C) for violating the protective order, and (b) the inherent power of the court to protect its integrity and punish litigants for gross misconduct (citing Dotson v. Bravo, 321 F.3d 663 (7th Cir. 2003)).

Mr. Dore's response to the motion to dismiss relied primarily on his argument that the protective order was not violated because defendant had not marked Ms. Erickson's personnel file "confidential," as required by the order for the protection of confidential documents. Neither Mr. Dore nor plaintiff denied the facts recited above about the alleged forgeries. Instead, Mr. Dore argued that defendant should have produced Ms. Erickson's time sheets but failed to do so (which defendant denies) -- as if that justified plaintiff's conduct. Mr. Dore also complained about other, unrelated discovery infractions by defendant and argued that his client's conduct did not rise (or sink) to the level of contempt or abuse that would justify sanctions pursuant to Rule 37 or the "innate" authority of the court.

Because of the serious, indeed potentially criminal[4] nature of the conduct alleged by defendant, the court allowed the parties to take discovery. At her deposition on December 31, 2003, plaintiff asserted her spousal, attorney-client and Fifth Amendment privileges, and refused to answer any substantive question. At his deposition, Paul Greviskes asserted the spousal and attorney-client privileges, and answered those questions deemed not to implicate those privileges.

The court decided to hold an evidentiary hearing on the motion to dismiss, again due to the serious nature of this matter, as well as questions about the scope of the privileges asserted by Paul Greviskes. Additional evidence of misconduct by plaintiff in attempting to conceal certain facts raised in defendant's reply brief after discovery, as more fully discussed below, also motivated the court to hold an evidentiary hearing. Although Mr. Dore filed no less than two frivolous motions to "dismiss" the motion to dismiss and avoid the hearing, the court conducted

---

[4]In addition to the forgery, unauthorized use of a person's social security number may be a violation of 42 U.S.C. § 408(a)(8), and transmission of the faxes may constitute wire fraud under 18 U.S.C. § 1343.

4

the hearing[5] on May 26, 2004. At the hearing plaintiff asserted the same privileges for her and Paul Greviskes that had been asserted at their depositions. In addition, defendant presented several witnesses from SBC and defendant's staff, including Ms. Erickson and Ms. Consolvo. Mr. Dore subpoenaed Mr. Gassman, but his examination of Gassman was totally immaterial.

The following additional facts were established by documents and affidavits submitted by defendant after it conducted discovery with respect to the motion to dismiss, and by the exhibits and testimony at the May 26 hearing:

1. According to records and testimony from representatives of SBC Services, Inc., the telephone company that services plaintiff's home, Paul Greviskes' law firm and Greviskes Builders, the second telephone line at plaintiff's home at the time the November 24 and 25, 2003, faxes were sent was 630-896-6856.

2. At the times those faxes were sent, one minute calls were placed from plaintiff's second line (630-896-6856) to defendant's payroll department's telephone number 630-840-2528.

3. On or about December 26, 2003, SBC cancelled plaintiff's second home line (630-896-6856) and installed a new number for a second home line (630-859-0045), at the customer's request.

4. According to a declaration by Rosetta Hicks, a "Service Records Clerk" at SBC's Dallas office, late in December 2003 and January 2004 Ms. Hicks responded to a complaint by plaintiff "about certain records being disclosed in response to [a] subpoena" issued by defendant in connection with the instant proceedings. Ms. Hicks states that she called plaintiff's primary home number (630-896-6146) and spoke with a woman identifying herself as plaintiff. Over several such telephone conversations, according to Ms. Hicks, plaintiff (who was "noticeably upset") complained that SBC should not release records related to plaintiff's home secondary line because a motion to quash the subpoena had purportedly been

---

[5]Mr. Dore also filed a motion to quash a discovery subpoena on Dore & Rothchild seeking records relating to telephone number 630-585-8022 (Donald Greviskes's fax machine), and Paul Greviskes filed two motions to quash subpoenas seeking telephone records. As discussed more fully below, Paul's motions were denied, and Mr. Dore's motion was granted by agreement because defendant's counsel had concluded that Mr. Dore was not personally involved in plaintiff's misconduct.

5

granted. By the last of these conversations between Ms. Hicks and plaintiff, Ms. Hicks had learned that a motion to quash had been denied and so informed plaintiff. According to Ms. Hicks, plaintiff began to cry when Ms. Hicks told her the records had been released pursuant to the subpoenas, and stated to Ms. Hicks that this was a murder case and that "the situation was too painful to discuss."

5. The complaint that began the phone calls between Ms. Hicks and plaintiff is reflected in defendant's Exhibits 3 and 13, a fax sent from an Office Depot in Aurora, Illinois (the same city as plaintiff's home address), to SBC's "Subpoena Center" in Dallas. According to the date and time denoted by these exhibits, this fax was sent at 5:18 p.m. on December 31, 2003, the same day plaintiff gave her deposition in this matter (at 10:00 a.m.).[6] The text of the fax reads:

> Per my conversation with Rosetta Hix [sic] on 12/29/03 at 2:55 pm. And her request for a informal note a motion to quash is being entered for 630-879-8383, and 630-879-8390.
>
> Billed under the master number 630-896-6146, is 630-859-0045. Only those two numbers can be released. A motion to quash is entered on 630-896-6856.

The "Fax Transmissions" (cover) sheet bears the signature of the "customer" of Office Depot who caused the fax to be sent. The signature is that of plaintiff, Angelita Greviskes. Although plaintiff asserted her Fifth Amendment privilege, her signature was tentatively identified by Ms. Erickson. In addition, a document bearing plaintiff's signature was introduced as defendant's Exhibit 16, which confirms that the signature on the December 31 (Exhibits 3 and 13) fax is plaintiff's. The court therefore admits these documents into evidence.[7]

---

[6]December 31, 2003, was also the day Paul Greviskes filed his first motion to quash defendant's discovery subpoena seeking records relating to his brother's fax machine. Paul's second motion and Mr. Dore's motion to quash were filed January 5, 2004, and presented to and ruled on by the court on January 8.

[7]The court had reserved ruling on the admissibility of defendant's Exhibits 3 and 13 at the May 26 hearing, and concludes that they are admissible as relevant (FRE 401) and authentic (FRE 901). In addition, to the extent plaintiff objected based on hearsay, they are not being admitted for the truth of the matters asserted therein (FRE 801(c)) and constitute admissions by a party against the party's interest (FRE 801(d)(2)).

As mentioned above, at the May 26, 2004, hearing plaintiff asserted her Fifth Amendment, marital and attorney-client privileges, the latter two with respect to her testimony and Paul's. Paul did answer questions that did not implicate those privileges, confirming that, (a) he had served as administrator of the estate of his brother, who died in April 2003, (b) the post office box on the November 24 and 25 faxes was that of his law office, (c) the fax number on those faxes (630-585-8022) was listed as his brother's business's second line, (d) he and plaintiff had reviewed copies of Terry Erickson's personnel file produced by defendant, and (e) that his brother had a fax machine. However, Paul Greviskes claimed never to have seen his brother's fax machine, at his brother's place of business or at Paul's or plaintiff's home, and also claimed not to know whether 630-896-6856 was his home's second line (before it was changed in late December 2003).

Paul Greviskes also stated that the only knowledge he had concerning the faxes in question depended on privileged communications with plaintiff, and thus refused to answer any questions concerning those matters.[8] Although defendant agrees that plaintiff and Paul Greviskes properly asserted and have not waived any of these privileges, this court, as trier of fact in this civil matter, is permitted to draw negative inferences with respect to credibility as well as the facts from the assertion of privileges. Daniels v. Pipefitters' Ass'n Local Union No. 597, 983 F.2d 800, 802 (7th Cir. 1993) (citing Baxter v. Palmigiano, 425 U.S. 308, 318 (1976). "Silence is often evidence of the most persuasive character." U.S. ex rel. Bilokumsky v. Tod, 263 U.S. 149, 153-54 (1923) (Brandeis, J.). Based upon Paul Greviskes's demeanor on the witness stand, as

---

[8]Paul Greviskes also refused to answer questions about whether plaintiff asked to disconnect her secondary home telephone line, whether she had contacted SBC and whether she had access to Donald Greviskes's office.

7

well as common sense, the court finds that his professed ignorance of his home secondary telephone number and his testimony that he had never seen his brother's fax machine is not credible.

## **FINDINGS AND CONCLUSIONS**

Having carefully considered the evidence, including the documents submitted into evidence and the testimony of the witnesses,[9] the court finds:

1. Plaintiff sent the November 24 and 25, 2003, faxes (Appendices 1 and 2 hereto) to defendant's personnel department, in which plaintiff, (a) impersonated Terry Erickson by forging her signature and using her employee identification and Social Security numbers, (b) improperly sought to obtain Ms. Erickson's protected personnel records, (c) falsely represented that the documents were to be sent to her attorney, Mr. Dore, when in fact the address and fax numbers listed in these faxes belonged to her husband, Paul Greviskes. Plaintiff sent the faxes over her second house telephone line (630-896-6856) using her deceased brother-in-law's fax machine.

2. Plaintiff obtained Ms. Erickson's employee identification and Social Security numbers and her signature from the personnel records produced by defendant during discovery. The agreed protective order entered by this court on July 22, 2003, specifically covers "personnel files of individuals other than [p]laintiff," and provided that such records could be retained and copied only by plaintiff's counsel (Mr. Dore)[10], and further provides: "Confidential Documents and the contents thereof shall not be disclosed or made known by Plaintiff's counsel to any other person, except . . . . [t]o the Plaintiff for purposes of this lawsuit only . . .

---

[9]The court is concerned that Ms. Hicks' testimony was presented by affidavit rather than deposition, which could easily have been conducted by telephone. Plaintiff has not objected to the introduction of the affidavit or sought to strike it, however. Moreover, the court took defendant's motion to dismiss to consider along with the summary judgment motion which, under Fed. R. Civ. P. 56, maybe supported by affidavit. Finally, plaintiff has not contested the facts asserted by Ms. Hicks, and her December 31, 2003, fax to SBC (discussed above) confirms she spoke to "Rosetta Hix" about the subpoenas issued by defendant to SBC. Even were the court to accord the Hicks' affidavit little weight, this would not help plaintiff, because her December 31, 2003, fax confirms that she was attempting to conceal material information.

[10]Apparently, the order was intended by the parties also to allow disclosure to Paul Greviskes, who represented plaintiff in the state court proceedings.

8

and non-testifying non-party witnesses whose assistance is necessary for purposes of litigating this action to the extent necessary in order to furnish such assistance . . . ."

The order, therefore, does not seem to prohibit disclosure of information from a personnel file to a party's personnel department that already possesses that information. Moreover, as continually noted by Mr. Dore, defendant's counsel neglected to mark Ms. Erickson's personnel file "Confidential," as required by the protective order to afford protection to those documents.

3. Consequently, the court concludes that although plaintiff's use of Ms. Erickson's employee identification and Social Security numbers and her (forged) signature violated the spirit of the protective order, it did not violate the letter of the order.

4. Failure to establish an express violation of the protective order as a Rule 37(b) violation is of little help to plaintiff, however, because her conduct was deceptive, fraudulent, criminal[11] and inexcusable.

   (a) Plaintiff's forgery of Ms. Erickson's signature is a crime under state law. 720 ILCS 5/17-3.

   (b) Plaintiff's misuse of Ms. Erickson's Social Security number is a felony under 42 U.S.C. § 408(a)(8).

   (c) Transmission of the November 24 and 25, 2003, faxes by telephone to defendant's payroll office constitutes wire fraud in violation of 18 U.S.C. § 1343.

5. Plaintiff knew her conduct in sending the faxes was improper and tried to conceal it by falsely representing to SBC that the court had granted in part a motion to quash the subpoenas defendant had served on SBC. Having learned that fax transmissions could be traced to her home, plaintiff sent her December 31, 2003, fax to SBC from an Office Depot in her home town of Aurora on the same day she had been questioned about the November faxes at her deposition and that her husband filed a motion to quash defendant's first subpoena seeking documents concerning the telephone number on his brother's fax machine.

6. As previously discussed, the court finds that plaintiff sent the December 31, 2003, fax to SBC (defendant's Exhibits 3 and 13) in an attempt to conceal material

---

[11] The court does not intend by these findings to imply that the evidence establishes guilt beyond a reasonable doubt, as would be required in a criminal proceeding (at which no inference of guilt could be drawn from plaintiff's assertion of her Fifth Amendment privileges).

9

information about the transmission of her November 24 and 25, 2003, faxes to defendant on her second home line, 630-896-6856. Plaintiff also tried to convince SBC not to release information about that line by falsely stating or implying that the court had granted a motion to quash defendant's subpoenas seeking that information. This conduct, along with plaintiff's cancelling her second line in the first place, clearly establishes an attempt by plaintiff to conceal evidence and obstruct justice, as well as the conduct of grossly bad faith litigation.

7. Plaintiff's unlawful transmission of the November 24 and 25, and December 31, 2003, faxes is an affront to this court and the entire civil justice system, and deserves nothing less than the most severe sanction of dismissal with prejudice, both to punish plaintiff and to deter others who might be tempted to such conduct in the prosecution of civil claims. This court possesses the inherent authority to impose this sanction in this highly unusual and unpleasant case. See Dotson v. Bravo, 321 F.3d 663 (7th Cir. 2003).

In reaching this conclusion the court has carefully considered all the facts set forth above, and is struck by plaintiff's deliberate, repeated and unrepentant misconduct. This was no momentary lapse of judgment or misguided adventure for this plaintiff. The fact that plaintiff sent not one but two faxes to the personnel department of the company that she had worked for and was suing in the state and federal courts demonstrates plaintiff's calculated scheme to impersonate Ms. Erickson to obtain information. Her later stunning attempts to cover-up her wrongdoing confirm plaintiff's knowledge and appreciation of the criminal nature of her scheme (this was a "murder" case, she told Ms. Hicks).

Apparently, plaintiff believes that the processes of this court exist to serve her selfish interests rather than to serve the cause of justice. Plaintiff is wrong, and must be sanctioned in the only manner that will deprive her of the very process she sought to pervert. Her misconduct exhibits "such flagrant contempt for the court and its processes that to allow [her] to continue to invoke the judicial mechanism for [her] own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interest of the parties immediately before the court." Dotson, 321 F.3d at 668.

8. In addition to plaintiff's direct misconduct, her husband's and lawyer's conduct throughout the proceedings on defendant's motion to dismiss have been aimed at preventing the court from inquiring into the matter and determining the facts. Beginning with Mr. Dore's churlish response to defendant's query about the November faxes and continuing with Paul Greviskes's frivolous attempts to block the subpoena for SBC's records, to Mr. Dore's inept attempts to derail the evidentiary hearing, one attempted roadblock after another has been developed to

10

prevent this court from reaching the conclusions it has reached herein.[12] While plaintiff and her attorneys (including her husband) have every right on her behalf to assert the privileges discussed above and to put defendant to its burden to establish the facts, the court may infer from her conduct of the litigation a continued, unrepentant, defiant and indefensible attitude by plaintiff that reinforces the court's decision to impose the "ultimate" sanction of dismissal of her action with prejudice.

The court concludes, therefore, that plaintiff's transmission of any one of the three faxes (the two November 2003, faxes to defendant's personnel department and the December 31, 2003, fax to SBC) justify dismissing this case. Taken together, these transgressions demand nothing less.

## CONCLUSION

For the foregoing reasons, this action is dismissed with prejudice. In addition, plaintiff is ordered to pay defendant's reasonable attorney's fees incurred in connection with the motion to dismiss. The parties are directed to comply with Local Rule 54.3 with respect to the fees awarded hereunder.

**ENTER:** **June 16, 2004**

**Robert W. Gettleman**
**United States District Judge**

---

[12] In addition, Mr. Dore filed a post-hearing brief in which he repeats his Rule 37 argument and contends that this is a contempt proceeding that somehow violated plaintiff's due process rights. The court cannot imagine how plaintiff could have been accorded any more due process than was offered in this case. The court on several occasions informed the parties of the issues it had identified with respect to defendant's motion to dismiss, the seriousness of those issues, and the evidentiary concerns the court intended to address at the hearing. Once again, Mr. Dore's response to the evidence demonstrates his misconception of the nature and gravity of these proceedings.

# Fermilab

TO: Payroll

FROM: Terry Erickson *Terry Erickson*

SUBJECT: Timesheets

Please provide a copy of my timesheets (monthly) starting with January 2001 through and including December 2002. They need to be mailed to the following address by November 30, 2003.

Dore & Rothchild
c/o P.O. Box 393
Batavia, IL. 60510

You may fax then if you wish 630-879-8390. I will be out of the office the rest of the week.

SS# 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

Thank you

**EXHIBIT 1**


Fermilab

November 25, 2003

In my haste yesterday I noticed I had not put a date on the fax.

TO:      Payroll Records

FROM:    Terry Erickson  *Terry Erickson*

SUBJECT: Monthly time sheets

Please send a copy of my monthly timesheets starting with January 2001 through and including December 2002. ID 1384 Social Security 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

I will be away the rest of the week and I know it's short notice, but hopefully you can get to them before the break.

Mail to:
Rotbchild & Dore
c/o P.O. Box 393
Batavia, IL. 60510

Thanks,

EXHIBIT
2